IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
: CASE NO. 1:14-bk-00356 RNO
ROBERT AARON HUNT :
: CHAPTER 7
Debtor :

**OPINION**[1]

Before the Court is Rite Aid Hdqtrs. Corp.'s ("Rite Aid") Motion to Dismiss the Chapter 7 Bankruptcy Petition of Robert A. Hunt ("Debtor") pursuant to 11 U.S.C. §707(a)[2] ("Motion"). For the reasons stated below, the Motion is denied.

**I.      Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

**II.     Facts and Procedural History**

Rite Aid's claim against the Debtor was the subject of prepetition litigation. In June of 2009, Rite Aid sued the Debtor, along with other parties, in Pennsylvania State Court ("State Court Litigation"). Motion (1) to Dismiss Debtor's Chapter 7 Bankruptcy Case or, in the Alternative, (2) to Compel Debtor to Comply with the Court's Order and for Sanctions, ¶¶ 6-7, August 14, 2014, ECF No. 34 [hereinafter ECF No. 34]. Rite Aid sought damages of $2,132,541 in its State Court Litigation claim of unjust enrichment and conversion against the Debtor.  ¶ 7, ECF No. 34.

The Motion alleges that three business days prior to the scheduled trial in the State Court

---

[1]      Drafted with the assistance of William J. Schumacher, Law Clerk.

[2]      Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

Litigation, the Debtor filed his January 29, 2014, Chapter 7 voluntary petition. *Id*. The State Court Litigation was stayed by the Debtor's bankruptcy filing. *Id*. at ¶ 21.

Rite Aid commenced an adversary proceeding ("Adversary Proceeding") on April 30, 2014, against the Debtor filed to adversary case number 14-ap-00096. In the Adversary Proceeding, Rite Aid seeks to except its claim from any Chapter 7 discharge.

On March 25, 2014, Rite Aid moved, pursuant to Federal Rules of Bankruptcy Procedure ("FRBP") 2004 ("Rule 2004 Motion"), for an order seeking production of documents and a deposition of the Debtor. Debtor's Response and Objection to Motion of Rite Aid Hdqtrs. Corp. (1) to Dismiss Debtor's Chapter 7 Bankruptcy Case or, in the Alternative (2) to Compel Debtor to Comply With the Court's Order and for Sanctions and Cross-Motion for Relief From Order, ¶ 10, November 5, 2014, ECF No. 37 [hereinafter ECF No. 37]. On May 22, 2014, an Order granting an FRBP 2004 examination was entered ("Rule 2004 Order"). Order Granting Motion for Examination under Rule 2004 of Robert Aaron Hunt, May 22, 2014, ECF No. 29. Rite Aid served the Debtor with a Notice of Rule 2004 Examination and a revised document request to comply with the Rule 2004 Order on June 4, 2014. ¶ 10, ECF No. 34. The Notice of Rule 2004 Examination scheduled the examination to occur on June 18, 2014. *Id*. However, due to the Debtor's health problems, the Debtor and Rite Aid agreed to reschedule the examination. *Id*. at ¶ 11. The Debtor produced some responsive documents on July 11, 2014. *Id*. at ¶ 12.

Essentially, Rite Aid provides three reasons why I should dismiss the Debtor's Chapter 7 bankruptcy petition. First, that the Debtor's alleged failure to comply with the Rule 2004 Order, which required the Debtor to produce documents and to attend a Rule 2004 Examination, warrants dismissal of the Debtor's bankruptcy petition. ECF No. 35. Second, Rite Aid alleges

that the Debtor's "schedules and representations" demonstrate that the bankruptcy petition was filed in bad faith because the Debtor does not seek a fresh start through this bankruptcy, but instead seeks to avoid a single debt, the debt owed to it. *Id*. Third, Rite Aid alleges that the bad faith nature of the filing is shown by the Debtor continuing to lead an extravagant lifestyle and his ability to pay his debts.

The Debtor counters Rite Aid's three assertions. First, the Debtor asserts that Rite Aid has failed to allege any prejudice as the result of the Debtor's inability to attend the Rule 2004 Examination. ¶ 22, ECF No. 37. Second, that Rite Aid is not the sole creditor of the Debtor and, thirdly, that the Debtor does not live an extravagant lifestyle. *Id*.at ¶¶ 31-47.

Federal Rule of Bankruptcy Procedure 1017(f) provides the procedural requirements for dismissal and states that FRBP 9014 governs a proceeding to dismiss a case. Fed. R. Bankr. P. 1017(f). Federal Rule of Bankruptcy Procedure 9014 states that in a contested matter, relief shall be requested by motion, and reasonable notice and an opportunity for hearing shall be afforded the party against whom relief is sought. Fed. R. Bankr. P. 9014(a).

Rite Aid served the Motion on August 14, 2014, with proper notice as required by FRBP 9014. Rite Aid has filed its brief in support of its Motion and the Debtor has filed his opposition brief. On September 18, 2014, pursuant to FRBP 9014, a hearing was held on the Motion. At that time the parties stipulated that the claims against the Debtor were primarily non-consumer debts and not subject to § 707(b). The Motion is now ripe for decision.

**III. Discussion**

Whether or not to dismiss a bankruptcy petition is guided by equitable principles. *In re Marks*, 174 B.R. 37, 39 (E.D. Pa. 1994). Section 707 of the Bankruptcy Code provides that:

3

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including –
  (1) unreasonable delay by the debtor that is prejudicial to creditors;
  (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
  (3) failure of the debtor in a voluntary case to file … the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

(b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4))….
  (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider--
    (A) whether the debtor filed the petition in bad faith; or
    (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707.

The Third Circuit held that a significant difference exists between dismissals under § 707(a),

which applies to all debtors, and § 707(b), which applies only to debtors whose debts are primarily consumer in nature. *Perlin v. Hitachi Capital Am. Corp.*, 497 F.3d 364, 370-71 (3d Cir. 2007) [hereinafter *In re Perlin*]. Therefore, I will only consider the application of § 707(a) to the case at bar because the debts of the Debtor are not primarily consumer in nature, as stipulated to by the parties.

Section 707(a) provides three non-exclusive examples of "cause" meriting dismissal. *In re Perlin*, 497 F.3d at 369. A debtor's lack of good faith may also constitute cause under § 707(a). *See, In re Perlin*, 497 F.3d at 369; *In re Jakovljevic-Ostojic*, No. 13BK27271, 2014 WL 4628906, at *6 (Bankr. N.D. Ill. Sept. 17, 2014). In analyzing a debtor's good faith, a court must examine the totality of the facts and circumstances.

I will next examine whether cause for dismissal of the Chapter 7 petition has been shown.

    A.    **Whether or not the Debtor's Bankruptcy Petition Caused Unreasonable Delay that is Prejudicial to Rite Aid**

Section 707(a)(1) has been applied when creditors have been prevented from collecting debts owed to them for a significant amount of time. *In re Aiello*, 428 B.R. 296, 300-01 (Bankr. E.D.N.Y. 2010). In the case of an involuntary dismissal sought by a creditor, a creditor must show that it suffered prejudice beyond that experienced by "any creditor who is stayed from collecting a debt." *Id.* at 300. Similar to the case at bar, *In re Aiello* involved a Chapter 7 no asset case where the debtor's largest creditor sought dismissal of the debtor's Chapter 7 petition under § 707(a). *Id.* at 296-303. *In re Aiello* held that bad faith findings under § 707(a) should be limited to "extreme misconduct falling outside the purview of more specific Bankruptcy Code provisions." *Id.* at 303.

In the case at bar, the passage of time in this case can partly be attributed to the Motion

5

and other discovery motions by Rite Aid. *See e.g.*, ECF No. 15; ECF No. 24; ECF No. 34. To the extent that there is self-created delay, I conclude that such delays cannot fairly be attributed to the Debtor. The fact that a debtor effectively put creditors on hold and delayed the pursuit of state law claims is simply the result of filing bankruptcy and the automatic stay under § 362(a). *In re Aiello*, 428 B.R. at 300. Without more than a delay in collecting debts, that delay alone cannot constitute cause for dismissal. *Id*.

I note that unsecured creditor claims are generally relegated to the claims allowance process. *In re U.S. Physicians, Inc.*, 236 B.R. 593, 601 (Bankr. E.D. Pa. 1999). Also, *In re Perlin* strongly cautioned against the use of dismissal as a sanction. *In re Perlin*, 497 F.3d at 373. The Third Circuit stated that dismissal should be "'confined carefully' and utilized only in 'egregious cases. . . .'" *Id*. Dismissal is the ultimate sanction reserved for the most egregious cases. There are other remedies available to a creditor such as seeking costs caused by the delay. I find *In re Aiello* persuasive.

*In re Aiello* provides that the party moving to dismiss for cause under § 707(a) bears the burden of proving cause by a preponderance of the evidence. *In re Aiello*, 428 B.R. at 299; *In re Forever Green Athletic Fields, Inc.*, 500 B.R. 413, 426 (Bankr. E.D. Pa. 2013) (a debtor seeking dismissal of an involuntary Chapter 7 petition must rebut by a preponderance of the evidence the presumption of good faith that petitioning creditors enjoy), *aff'd sub nom. Forever Green Athletic Fields, Inc. v. Dawson*, 514 B.R. 768 (E.D. Pa. 2014)); *In re Gearhart*, No. 1:10-BK-00741MDF, 2010 WL 4866179, at *3 (Bankr. M.D. Pa. Nov. 23, 2010) (the movant bears the burden of proving by a preponderance of the evidence that the bankruptcy petition constitutes abuse under § 707(b)).

Similar to the creditor in *Aiello*, Rite Aid has failed to prove by a preponderance of the evidence actual prejudice beyond that experienced by any creditor stayed from collecting its debt. Rite Aid alleges that unreasonable delay by the Debtor's bankruptcy petition has caused prejudice to Rite Aid because it cannot prosecute its claims against the Debtor in the State Court Litigation. However, I fail to see how this is unusual or peculiar to Rite Aid, especially when the passage of time in this case can be partly attributed to this Motion and discovery motions by Rite Aid. Rite Aid is no different than the other unsecured creditors of the Debtor. Thus, the fact that the Debtor put Rite Aid's State Court Litigation on hold is a "mere byproduct of having filed bankruptcy," and the delay in collecting debts, without more, cannot alone constitute cause for dismissal under § 707(a)(1). *See*, *In re Aiello*, 428 B.R. at 300.

Rite Aid also alleged that the Debtor's failure to attend the Rule 2004 Examination on August 12, 2014, caused unreasonable delay and prejudice. The only case law that Rite Aid cites for the proposition that the failure to attend a Rule 2004 examination results in unreasonable delay and prejudice was *In re Delone*, 06-10087DWS, 2006 WL 3898390 (Bankr. E.D. Pa. May 31, 2006). *In re Delone* stands for the proposition that a debtor who failed to comply with the statutory requirements of paying the filing fee, obtaining credit counseling under § 109(h), or attending the meeting of creditors as necessitated by § 341 may be considered to have caused unreasonable delay and prejudice to creditors. *In re Delone*, 2006 WL 3898390 at *3. Further, the debtor in *Delone* had filed two prior Chapter 13 cases and then filed yet another bankruptcy under Chapter 7, and subsequently sought to convert to Chapter 13. *In re Delone*, 2006 WL 3898390 at *1. Thus, *In re Delone* is distinguishable because it addressed the failure to meet the statutory requirements of a bankruptcy filing, rather than an alleged failure to

7

fully comply with a Rule 2004 examination.

In the case at bar, any harm to Rite Aid has already been mitigated. On October 10, 2014, I entered an Order (ECF No. 41) which specifically required the Debtor to produce enumerated documents to Rite Aid. Order Directing Debtor to produce documents and appear for an in-person Rule 2004 examination, October 10, 2014, ECF No. 41. The Order also required the Debtor to appear for an in person Rule 2004 examination within 30 days of the Order.

The Bankruptcy Court for the Western District of Pennsylvania held that a debtor's refusal to answer questions at a Rule 2004 examination did not constitute cause for dismissal. *In re Fekos*, 148 B.R. 10, 12 (Bankr. W.D. Pa. 1992). In *Fekos*, a secured creditor sought dismissal of the Chapter 7 case because the debtor refused to answer questions at a Rule 2004 deposition. *In re Fekos*, 148 B.R. at 11. The creditor asserted that this in itself constituted cause for dismissal under § 707(a). *Id*. Although *In re Fekos* involved the debtor's Fifth Amendment privilege against self-incrimination, the case still stands for the limited proposition that, absent egregious facts, failure to comply with a Rule 2004 examination is not sufficient for dismissal under § 707(a)(1). Further, the court in *Fekos* required only a good faith attempt to comply with the spirit of the Bankruptcy Code and Rules. *Id*. at 12. In *Fekos*, Judge Markovitz found that the debtor's refusal to answer questions did not affect the trustee's ability to administer assets. Similarly, here I find that the Debtor's alleged actions have not affected the trustee's ability to administer assets.

Under *In re Fekos*, the Debtor has made a good faith attempt at complying with the Rule 2004 examination. First, the Debtor's counsel did provide some documents responsive to Rite

8

Aid's request on July 11, 2014. ¶ 12, ECF No. 34. Second, the Debtor defended against Rite Aid's request for discovery sanctions, in part, by providing medical records documenting the Debtor's recent medical problems. *Id*. Therefore, because of the Debtor's attempts to comply with the Rule 2004 examination and the Debtor's documented medical issues, I conclude that Rite Aid has failed to establish that the delay in the Rule 2004 examination constitutes cause for dismissal.

B. Whether or not the Debtor's Filing Constituted Bad Faith

i. Legal standard to determine good faith

I am guided by the Third Circuit's decisions in *Tamecki* and *In re Perlin*, which established the grounds for dismissal based on cause, including when a debtor files a Chapter 7 petition in bad faith. *See*, *In re Tamecki*, 229 F.3d 205 (3d Cir. 2000); *In re Perlin*, 497 F.3d 364. I must consider the totality of the circumstances when conducting a § 707(a) inquiry regarding an allegedly bad faith filing. *In re Perlin*, 497 F.3d 364.

In considering whether cause exists for dismissal under § 707(a), *In re Tamecki* is instructive. Although the Bankruptcy Code does not define "cause," *In re Tamecki* held that § 707(a) allows a bankruptcy court to dismiss a bankruptcy petition for cause when a petitioner fails to demonstrate his good faith in filing. *In re Tamecki*, 229 F.3d at 207. Further, the decision to dismiss a petition for lack of good faith is within the bankruptcy court's discretion. *Id*. Good faith is not defined in the Bankruptcy Code, however, courts have held that good faith requires at least a showing of honest intention. *Id*.

Additionally, once a party calls a petitioner's good faith into question, the burden shifts to the petitioner to prove his good faith. *Id*. However, courts can only determine good faith on

9

an ad hoc basis and must determine whether the petitioner abused the "provisions, purpose, or spirit of bankruptcy law." *Id*. Importantly, *In re Tamecki* stated that dismissal because of lack of good faith should be confined to only egregious cases that result from "concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *In re Tamecki*, 229 F.3d at 207 (citing *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)).

Similarly, *In re Perlin* held that a court should examine the totality of the circumstances as to where the petition falls on the "spectrum" from clearly acceptable to blatantly abusive. *In re Perlin*, 497 F.3d at 372. The Third Circuit cautioned that a bankruptcy court's discretion is not without limitations. *Id*. at 373. First, a lack of good faith should not be "lightly inferred." *Id*. Second, dismissal should be limited to only "egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *Id*. However, the court in *Perlin* went on to provide that a court may properly consider a debtor's income and expenses in assessing purported debtor misconduct. *Id*.

*In re Glunk* is also helpful in providing factors a bankruptcy court should consider for the dismissal of a Chapter 7 case for bad faith. *In re Glunk*, 342 B.R. 717, 734 (Bankr. E.D. Pa. 2006). There were five factors the court in *Glunk* considered:

1. the debtor's (extravagant) lifestyle and ability to pay ; . . .
2. the disproportionate impact that bankruptcy relief would have on one particular creditor, or only a few creditors, as compared to other creditors . . .;
3. forum shopping or efforts to manipulate the judicial process to thwart the orderly determination of a creditor claim pending in another court . . .;

4. prepetition fraudulent conduct to place assets beyond the reach of creditors or less than full and candid disclosure in the bankruptcy process itself . . .;

5. an end result, if bankruptcy relief is permitted, that is perceived to be fundamentally unfair or excessive . . . .

*In re Glunk*, 342 B.R. at 734. *In re Glunk* concluded that any of one the five factors by itself could be legally sufficient to warrant dismissal of a Chapter 7 case under § 707(a). My colleague, Judge France, considered the *In re Glunk* factors in her decision *In re Woods*,1:10-bk-01359MDF, 2011 WL 4807932 at *4 (Bankr. M.D. Pa. Oct. 11, 2011).

Next, I will analyze the *In re Glunk* factors to determine whether the Debtor's good faith was called into question by Rite Aid and whether the burden shifted to the Debtor to prove his good faith.

### ii. Application of the *Glunk* factors

#### 1. Extravagant lifestyle and ability to pay

The first factor looks to whether the debtor has an extravagant lifestyle. Rite Aid argues that the Debtor's reaffirmation of three motor vehicle and one boat loan constitute an extravagant lifestyle that the Debtor seeks to continue. ¶ 32, ECF No. 34. The four vehicles that Rite Aid characterizes as extravagant are: (1) a 2001 Lotus with a scheduled value of $30,000 subject to a secured claim of $25,762; (2) a 2006 Mercedes SLK with a scheduled value of $15,000 subject to a secured claim of $15,190; (3) a 2004 Range Rover with a scheduled value of $10,000 subject to a secured claim of $13,694; and (4) a 2002 Commodore boat with a scheduled value of $25,000 subject to a secured claim of $21,601. Schedules A-J and Summary of Schedules, ECF No. 7. Rite Aid also alleges that the Debtor's residence, with a scheduled value of $400,000 subject to a mortgage of $402,675, is extravagant. *Id*. It is noteworthy that the newest

11

of the vehicles is at least eight years old.  Further, Rite Aid has not offered any evidence disputing the scheduled values of any of the property.

Income and expenses are an important consideration for whether the reaffirmation of the three motor vehicles and one boat constitute an extravagant lifestyle.  *In re Glunk*, 342 B.R. at 736.  The Debtor has monthly income of $10,790 according to Schedule I.  Schedules A-J and Summary of Schedules, ECF No. 7.  The secured debt payments under the four reaffirmation agreements total $1,734.71.  This represents approximately 16% of the Debtor's monthly income.[3]

The Court does not appreciate the wisdom of each of the reaffirmation decisions the Debtor has made here.  However, each motor vehicle at least serves the transportation needs of the Debtor.  In regard to the boat, Rite Aid cites *In re Falch* for the proposition that the Debtor's $323.87 monthly expense for the boat constitutes a lack of good faith.  ¶ 33, ECF No. 34.  However, *In re Falch* is distinguishable from the present case.  First, the debtor in *Falch* expended more than $2,700 monthly on his boat.  *In re Falch*, 450 B.R. 88, 91-2 (Bankr. E.D. Pa. 2011).  Second, the value of the boat in *Falch* was approximately $170,000.  *In re Falch*, 450 B.R. at 91.  The debtor in *Falch* had monthly income of approximately $7,809.44.  *Id*.  Under the totality of the circumstances, the court concluded that the retention of the boat for recreational use constituted a lifestyle that was extravagant and constituted bad faith.  *Id*. at 98.

Rite Aid also cites *In re Boyle* to demonstrate that the Debtor's boat is an extravagant expense.  However, *In re Boyle*, like *In re Falch*, is also distinguishable from the present case.  First, *In re Boyle* involved a § 707(b) motion to dismiss unlike this case where the Motion was

---

[3]  This calculation was computed by taking the secured debt payments from the four reaffirmation agreements divided by the monthly income of the Debtor per Schedule I.  $1,734.71/$10,790 = 0.16077 or 16.077%.

brought under § 707(a). *In re Boyle*, 412 B.R. 108, 109 (Bankr. W.D.N.Y. 2009). Second, the boat's value in *Boyle* was $70,520. *In re Boyle*, 412 B.R. at 109. Third, the debtors spent more than $800 per month on boating expenses. *Id.* at 112. The court found that under § 707(b) the boat expense was an abuse sufficient for dismissal because it represented more than 20% of the debtors' income. *Id.* at 113.

Here, the Debtor's payment for the boat under the reaffirmation agreement is $323.87. Further, the scheduled value of the Debtor's boat is $25,000. I do conclude that the boat payment is essentially a recreational expense. However, I cannot conclude that a payment of $323.87, compared to the Debtor's monthly income, demonstrates an extravagant lifestyle. In *Boyle*, the debtors had a monthly expense related to their boat of more than $800 and in this case the monthly expense is only scheduled at $323.87. Further, the boat in *Boyle* was almost three times the scheduled value of the Debtor's boat, and the boat in *Falch* was approximately seven times the scheduled value of the Debtor's boat.

Additionally, the Debtor's monthly scheduled expense for the boat represents 3%[4] of the Debtor's scheduled monthly income. However, in *Falch* the debtor's monthly expense for his boat represented 34.6%[5] of the debtor's monthly income. The boat expense equaled more than 20% of the debtors' income in *Boyle*. Therefore, I cannot conclude that the payment of only 3% of the Debtor's monthly income for a boat represents an extravagant lifestyle.

Likewise, I cannot conclude that the value of the Debtor's house evidences an extravagant lifestyle. According to the Debtor's bankruptcy schedules, the house has negative

---

[4]    3.00% = $323.87/$10,790

[5]    34.57% = $2,700/$7,809.44

13

equity with a mortgage balance greater than the value of the house. Schedules A-J and Summary of Schedules, ECF No. 7. In *Glunk*, the debtors lived in a $3 million to $5 million residence. *In re Glunk*, 342 B.R. at 737. Still, the court in *Glunk* did not find that the value of the residence was a sufficient reason to dismiss the case without some other factors involved. *Id*. Instead, the court considered whether there were prepetition machinations such as diverting assets which would otherwise be available to satisfy a creditor's claim under applicable nonbankruptcy law. *Id*. at 737-38. In this case, there are no allegations of prepetition transfers or concealment of such assets.

Rite Aid also asserts that the Debtor has relatively little debt beyond Rite Aid's claim. However, in addition to Rite Aid's $2,132,541 claim, the Debtor has over $430,000 in additional scheduled unsecured debt, a scheduled mortgage of $402,675, and scheduled secured claims against his cars and boat of $76,247 with the scheduled value of the vehicles and the boat totaling $80,000. Unlike *In re Glunk*, where the debtors had liquid assets of over $500,000 and a residence of $3 million to $5 million, here the Debtor has minimal unencumbered liquid assets. *See*, *In re Glunk*, 342 B.R. at 737; Schedules A-J and Summary of Schedules, ECF No. 7.

Therefore, Rite Aid has failed to carry its burden to put in question the Debtor's good faith due to his alleged extravagant lifestyle and the ability to pay creditors. I conclude that this *In re Glunk* factor weighs against dismissal.

**2.  Disproportionate impact on particular creditors**

Rite Aid asserts that the Debtor's current bankruptcy will disproportionately impact Rite Aid compared to almost every other scheduled creditor. Rite Aid further alleges that the bankruptcy case will not affect even one of the Debtor's secured creditors. Rite Aid also argues

14

that the Debtor filed this bankruptcy to avoid the State Court Litigation and Rite Aid's scheduled $2.1 million claim. Rite Aid does hold the largest unsecured claim representing approximately 83.%[6] of total scheduled unsecured claims. However, the Debtor does have significant other scheduled unsecured claims, which total over $430,000 and represent 17% of the total scheduled unsecured claims.[7] I also note that the amount of Rite Aid's claim is scheduled as contingent, unliquidated, and disputed.

Further, *In re Glunk* also stated that even where there is one primary creditor, there must still be some other reason for a finding of disproportionate impact on a particular creditor. *In re Glunk*, 342 B.R. at 736. This includes "prepetition machinations to avoid payment, transfer of assets beyond the reach of the main creditor or some undue interference with an orderly judicial process for resolution of the primary debt." *Id*. On this record, I conclude that there is no such additional reason which would support a finding of disproportionate impact on Rite Aid.

*In re Aiello* is also persuasive on the issue of a disproportionate impact on a particular creditor. As noted previously in this Opinion, the fact that a debtor effectively put creditors on hold and delayed the pursuit of state law claims is simply the result of filing bankruptcy and the automatic stay under § 362(a). *In re Aiello*, 428 B.R. at 300. Without more, a delay in collecting debts alone does not constitute cause for dismissal even if it has a disproportionate impact on a particular creditor. Thus, the fact that the Debtor's petition halted the State Court Litigation is not in and of itself evidence of bad faith. I acknowledge that Rite Aid leveled serious allegations against the Debtor in the State Court Litigation. However, as of the date of this Opinion, there

---

[6]   82.95% = $2,100,000 / $2,531,568

[7]   17.05% = $431,568 / $2,531,568

15

has been no judicial determination that Rite Aid's disputed claim against the Debtor arose from fraud or other misconduct.

I find that the Adversary Proceeding, which seeks nondischargeability of Rite Aid's claim, also lessens any potential harm to Rite Aid that may result from any delay in concluding the State Court Litigation. I make no findings as to the ultimate outcome of the nondischargeability action.

However, I do find that bankruptcy relief would have a disproportionate impact on Rite Aid because Rite Aid's claim represents such a significant percentage of the total scheduled unsecured claims. On balance, I conclude this *In re Glunk* factor weighs slightly in favor of cause for dismissal.

### 3. Forum shopping or manipulation of the judicial process

Rite Aid argues that the Debtor's bankruptcy petition is an attempt to manipulate the judicial process and deny Rite Aid the opportunity to adjudicate its claims in state court. Rite Aid asserts that *In re Myers* is dispositive on this factor. However, *In re Myers* was a Chapter 13 case. *In re Myers*, 491 F.3d 120, 123 (3d Cir. 2007). Further, there the Third Circuit held that the debtor filed in bad faith because: (1) the debtor filed the petition after the conclusion of a state court bench trial, but before the ruling was entered; (2) the bankruptcy filing was a tactic to prevent adverse rulings; (3) the creditor's claim represented the vast majority of the debtor's debt; (4) the debtor did not meet the filing requirements for a Chapter 13 petition; and (5) the debtor had violated a state court order. *In re Myers*, 491 F.3d at 125. In *Myers*, the debtor violated a state court order when she allowed her husband to withdraw money from two entities controlled by the debtor prior to filing bankruptcy. The Third Circuit found this important to the

16

good faith analysis.  *In re Myers* is clearly distinguished from the case at bar.

Rite Aid also cites *In re Massie* in support of the Debtor's alleged bad faith.  However, *In re Massie* involved a Chapter 12 debtor who sought to dismiss her own case and a creditor who sought to convert the Chapter 12 case to Chapter 7 pursuant to § 1208(d).  *In re Massie*, 231 B.R. 249, 250 (Bankr. E.D. Va. 1999).  Further, in *Massie*, the debtor had inexcusable discrepancies between the assets owned by the debtor and those listed on the debtor's schedules.  *In re Massie*, 231 B.R. at 252.  The parties also presented testimony to the court on the discrepancies.  *Id.*  The debtor had minimal debt besides the amount at dispute in the case, which was held by a single creditor.  *Id.* at 253.  The debtor also admitted that she filed only to stop the creditor's state court action against her mother's property.  *Id.*  Based on the above, I find *In re Massie* to be distinguishable.

Additionally, Rite Aid alleges that the Debtor filed the petition with the sole intent to avoid the State Court Litigation.  This claim lacks factual support and does not rise to the level of egregious conduct needed to implicate bad faith.  *See*, *In re Tamecki*, 229 F.3d at 207.  Unlike *In re Massie*, the Debtor has not admitted to filing his petition for the sole purpose of halting the State Court Litigation.  Further, the Debtor has not filed multiple bankruptcies and the Debtor's schedules demonstrate that Rite Aid is not the only creditor with a claim against the Debtor's estate.  I find that this supports that the Debtor is not manipulating the judicial process.

Rite Aid also alleges that the Debtor's bankruptcy schedules claimed income of only $8,000 in 2013, but that the Debtor produced bank statements for eleven months of that year which demonstrate he deposited over $200,000 into his account during that time.  ¶ 44, ECF No. 34.  Although this allegation is concerning, there was no documentary evidence provided to

17

substantiate it.

      I find this *In re Glunk* factor weighs against dismissal.

### 4. Fraudulent prepetition conduct and inadequate disclosure in the bankruptcy process

No argument was presented suggesting fraudulent prepetition conduct or inadequate disclosure in the bankruptcy process. Neither Rite Aid nor the Debtor briefed this factor. I will consider this *In re Glunk* factor as neutral concerning cause for dismissal.

### 5. An end result that is fundamentally unfair or excessive

The final *In re Glunk* factor looks at whether it would be fundamentally unfair to allow a debtor to obtain relief under Chapter 7. *In re Woods*, 2011 WL 4807932 at *7. A significant consideration is that Rite Aid filed the Adversary Proceeding to except from discharge its $2,132,541 claim. Therefore, Rite Aid will have an opportunity to obtain a judicial determination as to whether Rite Aid's claim is nondischargeable under the provisions of § 523. If so proven, the Debtor would remain personally liable to Rite Aid.

What then if the Adversary Proceeding results in a finding that Rite Aid's claim is dischargeable? "A discharge under § 727 of the Bankruptcy Code is the primary tool used to afford debtors a fresh start. Congress has described the discharge as the 'heart' of bankruptcy law's fresh start provisions." *Bielan, Miklos & Makrogiannis v. Vasquez*, No. ADVPRO 08-1409-DHS, 2010 WL 1644175, at *2 (Bankr. D.N.J. Apr. 21, 2010), (citing, *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993)). The grant of discharge would thus further an important bankruptcy goal.

I conclude that the fifth *In re Glunk* factor weighs against cause for dismissal.

18

### iii. Whether the burden shifted to the Debtor to prove his good faith

Rite Aid has failed to provide sufficient evidence to shift the burden to the Debtor to prove that his case was filed in good faith. Under the *In re Glunk* factors, there was insufficient evidence that the Debtor concealed or misrepresented assets and/or sources of income, has a lavish lifestyle, or the intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*In re Perlin* determined that the ability to repay creditors alone is not itself sufficient cause for dismissal. *In re Perlin*, 497 F.3d at 374. The Third Circuit required that there be other "aggravating" facts. *Id*. In *Perlin*, the debtors had annual income of $370,000 with private school tuition totaling $5,000 per month. *Id*. at 367-68. Importantly, the Third Circuit held there that the debtors' substantial income and comfortable lifestyle were insufficient to demonstrate bad faith. *Id*. at 375.

In this case the Debtor has scheduled monthly income of $10,790, compared to the debtors in *Perlin* who had pre-2007 monthly income of approximately $30,833. Further, there are no substantiated allegations that the Debtor "schemed to conceal or misrepresent income, inflated [his] expenses to hide income, filed misleading statements or schedules in an effort to defraud [his] creditors, unduly interfered with the judicial process, or engaged in any other misconduct." *Id*. Thus, I cannot conclude that the Debtor has a lavish lifestyle or that the burden shifted to the Debtor to prove his good faith.

After giving due consideration to all relevant *In re Glunk* factors and the totality of the circumstances, I conclude cause for dismissal has not been shown.

19

## IV. Conclusion

Therefore, for the above reasons, Rite Aid's Motion to Dismiss the Debtor's Chapter 7 Bankruptcy is DENIED. An order will be entered consistent with the foregoing opinion.

By the Court,

*Robert N. Opel II* (signature)

Date: November 10, 2014

Robert N. Opel, II, Bankruptcy Judge

(BI)

20